IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARTHUR DUMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-229-SLR-SRF |
| | ) | |
| ABB GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

Presently before the court in this asbestos-based personal injury action are cross-motions to establish applicable substantive law.[1] (D.I. 322 & 323) The Plaintiff, Arthur Dumas ("Plaintiff"), argues that Virginia law should apply to this case. (D.I. 322 at 1) The Defendants counter that maritime law should govern. (D.I. 324 at 1) For the reasons that follow, Plaintiff's motion is DENIED, and Defendants' motion is GRANTED.

---

[1] The court will treat the pending motions as non-dispositive motions, which may be resolved by the court pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). The court does so because the subject of the motions is not one of (nor is it directly analogous to) the pre-trial matters listed in 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(3) that a United States Magistrate Judge must resolve through the issuance of a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(A); D. Del. LR 72.1(a)(3). Furthermore, district courts in a number of jurisdictions treat motions relating to choice of law as non-dispositive motions. *See, e.g., Aparicio v. Baumann*, 2014 WL 223648, at *1 (D. Nev. Jan. 21, 2014) (magistrate judge resolving "motion to determine applicable law"); *Duchesneau v. Cornell Univ.*, 2011 WL 5902216, at *1 (E.D. Pa. Nov. 23, 2011) (magistrate judge resolving "motion to establish applicable law"); *Schoeberle v. United States*, 2001 WL 292984, at *1 (N.D. Ill. Mar. 26, 2001) ("Clearly, in issuing a Memorandum Opinion and Order rather than a Report and Recommendation [the magistrate judge] is signaling that he considers this [motion for choice of law determination] a non-dispositive matter. We agree. While the determination of the choice of law issue in this case will impact the limits of the plaintiffs['] recovery, it will not dispose of the cause of action itself."); *Middleton v. Sutton*, 1995 U.S. Dist. LEXIS 376, at *1 (D.N.H. Jan. 5, 1995) ("The magistrate judge's choice-of-law determination is not dispositive of the plaintiff's cause of action.").

## II. BACKGROUND

### A. Procedural History

Plaintiff initiated this action by filing a complaint in the Superior Court of Delaware on December 14, 2012. (D.I. 1, Ex. A) The complaint asserts various causes of action arising out of Plaintiff's alleged exposure to asbestos throughout his employment. (*Id.*)

On February 13, 2013, the case was removed to this court by Defendant Yarway Corporation, pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.[2] (D.I. 1) Plaintiff filed his Second Amended Complaint on July 12, 2013. (D.I. 132)

On January 28, 2014, the parties notified the court of their dispute concerning the applicable substantive law and requested leave to file legal memoranda on their respective positions. (D.I. 315; D.I. 317) The court granted the parties' request on February 5, 2014.

On March 31, 2014, the court held oral argument on the motions to establish applicable substantive law.

### B. Facts

Plaintiff served in the U.S. Navy for approximately 20 years, from June 1954 to August 1974. (D.I. 322, Exs. A, B) Plaintiff alleges that he was exposed to asbestos throughout his service, at various naval stations and on naval ships. (D.I. 132 at 7-8) The ships included the USS Guide, Franklin D. Roosevelt, Forrestal, Enterprise, Ogden, Tidewater, and Vulcan. (D.I. 322, Exs. A, B)

According to Plaintiff, "[t]he overwhelming majority of [his] exposure [] relates to the

---

[2] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

times he served out of Virginia on the USS Forrestal – from about 1958-60 and about 1971-74, and the USS Enterprise pre-commissioning from 1960-61."[3] (D.I. 330 at 2; D.I. 322 at 3) Plaintiff further states that "[a]lthough [his] work was confined to the ships, the record is unclear whether the majority of the exposure occurred at shipyards or on the high seas." (D.I. 322 at 7)

### III. LEGAL STANDARD

"Normally, this court would apply the choice of law rules of the forum state – in this case, those of [Delaware] –" to determine what substantive law governs an action. *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). "However, if the case sounds in admiralty, it would be inappropriate to apply [Delaware] law or any other state's law, instead of federal admiralty law." *Id. See also* 28 U.S.C. § 1333(1).[4] Therefore, "[t]he initial step in the choice of law analysis is to determine whether this case 'sounds in admiralty.'" *Gibbs*, 314 F.3d at 131.

### IV. DISCUSSION

This threshold dispute is a question of federal law, which is governed by the law of the circuit in which the district court sits. *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 460 (E.D. Pa. 2011) (citing U.S. Const. art. III, § 2; 28 U.S.C. § 1333(1); *In re Asbestos Prods. Liab. Litig. (Oil Field Cases)*, 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)). "And it is an important one requiring cognizance of the balance between state and federal authority, because the applicability

---

[3] On March 31, 2014, at oral argument on the pending motions, Plaintiff submitted an exhibit ("Pl. Exhibit 1") that outlines his exposures in chart form. Pl. Exhibit 1 indicates, among other things, that Plaintiff was allegedly exposed to asbestos on land (as opposed to on ships at port and at sea), at various locations, for approximately five years cumulatively out of his twenty-year naval career. (*See* Pl. Exhibit 1)

[4] Section 1333(1) provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

of maritime jurisdiction results in federal maritime law displacing state law." *Conner*, 799 F. Supp. 2d at 460 (citations omitted).

"The initial step in the choice of law analysis is to determine whether this case 'sounds in admiralty.'"[5] *Gibbs*, 314 F.3d at 131.

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Grubart*, 513 U.S. at 534 (internal citations omitted). *See also Gibbs*, 314 F.3d at 131-32.

In the present case, the location and connection tests are satisfied and, therefore, maritime law applies. At the outset of the court's analysis, it should be noted that although the parties dispute the characterization of Plaintiff's work for the Navy (i.e., "sea-based serviceman" versus "land-based shipyard worker" (*see* D.I. 322 at 7; D.I. 332 at 2)), it is undisputed that the majority of Plaintiff's alleged asbestos exposure, including the Virginia-based[6] exposure, occurred aboard naval vessels, whether at sea or docked at various shipyards. (*See* D.I. 322 at 3, 7; D.I. 330 at 2; D.I. 324, Ex. A at 39-40, 90-129, 158-67, 182-99, 210-11; Pl. Exhibit 1)

---

[5] Plaintiff's argument that the court should apply the "most significant relationship test" (*see* D.I. 322 at 2) is contrary to Third Circuit precedent. *See Gibbs*, 314 F.3d at 131.

[6] "Virginia-based" refers to Plaintiff's alleged exposures that occurred on land in Virginia or aboard ships that were docked at various shipyards in Virginia. (*See* Pl. Exhibit 1)

4

A.  **Locality Test**

The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. *Grubart*, 513 U.S. at 534. In *Conner v. Alfa Laval, Inc.*, District Judge Robreno (presiding in MDL No. 875 – the multidistrict asbestos products liability litigation) explained that "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters."[7] *Conner*, 799 F. Supp. 2d at 466. "In assessing whether work was on 'navigable waters' (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters."[8] *Leonard v. CBS Corp.*, 2014 WL 345216, at *1 n.1 (E.D. Pa. Jan. 28, 2014) (citing *Sisson v. Ruby*, 497 U.S. 358 (1990)). *See also Deuber v. Asbestos Corp.*, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011) (explaining that "a ship on navigable waters . . . includes a ship docked at the shipyard" (citing *Conner*, 799 F. Supp. 2d at 466)).[9]

---

[7] "For approximately two decades, all asbestos-related personal injury and wrongful death actions were consolidated in the Eastern District of Pennsylvania as MDL No. 875 (the "MDL Court"). Judge Eduardo Robreno has presided over MDL No. 875 since 2008." *Joyner v. A.C. & R. Insulation Co.*, 2013 WL 877125, at *4 n.6 (D. Md. Mar. 7, 2013) (citing *In re Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 2d 1377, 1377-78 (J.P.M.L. 2011)).

[8] "By contrast, work performed in other areas of the shipyard or on a dock, []such as work performed at a machine shop in the shipyard, . . . is land-based work." *Leonard*, 2014 WL 345216, at *1 n.1 (citing *Conner*, 799 F. Supp. 2d at 460, 466-67).

[9] Notably, when the Judicial Panel on Multidistrict Litigation recently discontinued the transfer of new asbestos cases to MDL No. 875, it contemplated that district courts presiding over future asbestos cases "will almost certainly find useful guidance in the many substantive and thoughtful rulings that have been issued during the lengthy course of the multidistrict proceedings," and specifically referenced the *Conner* decision, among others, relative to application of maritime law. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 2d at 1379 & n.5.

Here, the locality test is met because the vast majority of Plaintiff's alleged asbestos exposure occurred on vessels on navigable waters – regardless of whether the exposure was aboard ships at sea or docked at various shipyards.[10]

### B. Connection Test

The connection test requires that the "type of incident involved" have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 364, 365 & n.2).

However, where a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will almost always meet the connection test necessary for application of maritime law. *Conner*, 799 F. Supp. 2d at 467-69 (citing *Grubart*, 513 U.S. at 534). "This is particularly true in cases in which the exposure has arisen as a result of work aboard Navy vessels, either by Navy personnel or shipyard workers." *Leonard*, 2014 WL 345216, at *1 n.1 (citing *Conner*, 799 F. Supp. 2d at 467-69).

#### 1. Whether the incident has a potentially disruptive impact on maritime commerce

This inquiry "turns[] . . . on a description of the incident at an intermediate level of possible generality," requiring the court to consider "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Grubart*, 513 U.S. at 538-39. The inquiry goes to "potential effects, not to the particular facts of the incident." *Id.* at 538.

---

[10] In this respect, Plaintiff's exhibit, submitted at oral argument on the pending motions, lends greater support for the application of maritime law over Virginia State law. Indeed, Plaintiff asserts in Pl. Exhibit 1 that "significant" asbestos exposure occurred while he served on the USS Forrestal. (Pl. Exhibit 1)

The "type of the incident involved" in this case could be described as one of "injury to workers on Navy ships on navigable waters allegedly caused by defective parts" or "exposure to allegedly defective products on or around Navy ships on navigable waters." *See Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1188-89 (D. Haw. 2013); *Conner*, 799 F. Supp. 2d at 467. In any case, it is clear that the incident involves an alleged injury on Navy ships. Moreover, given these descriptions, "there is little question that this is the kind of incident that has a 'potentially disruptive impact on maritime commerce.'" *Grubart*, 513 U.S. at 539. Indeed, in *Connor*, the MDL Court observed that such an incident could disrupt maritime commerce in a number of ways:

> [E]xposure to defective products creates unsafe working conditions that could cause labor shortages on the ships due to injuries sustained aboard. And a shortage of this nature "could be exacerbated by fear of exposure by crew members and potential crew members alike." Any such occurrence would disrupt the Navy's ability to protect other commercial ships at sea if called upon to do so.

*Conner*, 799 F. Supp. 2d at 467-68 (internal citation omitted). Thus, the first prong of the connection test is met.

### 2. Whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity

Under the second inquiry, the "tortfeasor's activity" must be "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply."[11] *Grubart*, 513 U.S. at 539-40. In identifying the activity, the court should "focus

---

[11] Contrary to Plaintiff's assertion (*see* D.I. 322 at 4), the nature of a plaintiff's injury does not determine whether there is a substantial relationship to maritime activity. Rather, the focus is on the "*tortfeasor's activity*, commercial or noncommercial, on navigable waters." *Grubart*, 513 U.S. at 539 (emphasis added). Therefore, the court must look not at Plaintiff's injury (or activities), but instead, the general activities of the tortfeasor. The Court in *Grubart* further emphasized this point by noting that, where there are multiple tortfeasors, "as long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong." *Id. at* 541.

7

on the general character of the activity," as opposed to the "particular [factual] circumstances of the incident" at issue. *Sisson*, 497 U.S. at 363-64. However, the court must not characterize the activity so generally so as to "eliminate any hint of maritime connection." *Grubart*, 513 U.S. at 541-42.

Viewing the activity generally, the court finds that the activity giving rise to the incident was the manufacture of products for use on vessels. *See Conner*, 799 F. Supp. 2d at 469. The products manufactured in this case – boilers, pumps, valves, gaskets, packing, and insulation (*see* D.I. 132 ¶ 10), among others – "were essential for the proper functioning of ships and made for that purpose." *Conner*, 799 F. Supp. 2d at 469. Consequently, the products' allegedly defective production bears a substantial relationship to traditional maritime activity.

### C.   *Grubart* Eliminated the Application of Multifactor Choice of Law Tests

Plaintiff erroneously relies upon the choice of law analysis set forth in *Oman v. Johns-Manville Corp.*, 764 F.2d 224 (4th Cir. 1985) in support of his argument that maritime law does not apply in this case. (*See* D.I. 322 at 3-6) In *Oman*, the Fourth Circuit adopted a "nexus test" that uses the following four factors to analyze the relationship between a given claim and traditional maritime activity:

> (1) the functions and roles of the parties;
> (2) the types of vehicles and instrumentalities involved;
> (3) the causation and the type of injury; and
> (4) traditional concepts of the role of admiralty law.

*Oman*, 764 F.2d at 230 (citations omitted). Plaintiff relies on *Oman* in light of the Fourth Circuit's holding that "admiralty jurisdiction does not extend to damage claims by land-based ship repair or construction workers for employment-related, asbestos-induced disease." *Id.* at 227. Plaintiff further contends that "[s]ome recent [sic] courts in Hawaii and elsewhere have misguidedly gone against the 4th [sic] circuit [sic] in *Oman*. They have used the *Sisson/Grubart*

test to determine that Maritime [sic] Law [sic] applies in Navy asbestos exposure cases." (D.I. 322 at 4) Contrary to Plaintiff's assertion, it is inappropriate to apply a multifactor test when determining whether maritime law applies in a given case.

The reason "courts in Hawaii and elsewhere" no longer follow *Oman* and other like cases is because they were implicitly disavowed by the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). In *Grubart*, the Great Lakes Dredge & Dock Company ("Great Lakes") bid on a contract with the city of Chicago to replace wooden pilings clustered around the piers of several bridges spanning the Chicago River. *Grubart*, 513 U.S. at 530. The pilings kept ships from bumping into the piers and served to protect both. *Id.* After securing the contract, Great Lakes replaced the pilings around the piers projecting into the river. *Id.* Great Lakes carried out the work with two barges towed by a tug (i.e., vessels on navigable waters). *Id.* One barge carried pilings, and the other carried a crane that pulled out old pilings and helped drive in new ones. *Id.*

Notably, a freight tunnel ran below the river in the area where the pilings were replaced. *Id.* Several months later, an eddy formed in the river, causing the walls of the freight tunnel under the river to collapse and open the tunnel to river water, which flooded a number of buildings in downtown Chicago. *Id.*

After the flood, many of the victims brought actions in state court against Great Lakes and the city of Chicago, claiming that in the course of replacing the pilings Great Lakes had negligently weakened the tunnel structure, which Chicago (the tunnel owner) had not properly maintained. *Id.* Great Lakes then brought an action in the U.S. district court, invoking federal admiralty jurisdiction. *Id.* The issue before the Supreme Court was whether a court of the United States had admiralty jurisdiction to determine and limit the extent of Great Lakes' tort liability.

9

The flood victims and city of Chicago (together, the "petitioners") opposed the application of maritime law to the claims in the underlying suit. *Id.* at 531. The petitioners argued that because the case involved "land based parties and injuries," the court should apply the four-factor test utilized in *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973), which is identical to the test in *Oman*, discussed *infra*. *Grubart*, 513 U.S. at 543-44.

The *Grubart* Court expressly rejected the *Kelly* framework (and implicitly, all variants thereof). *Id.* at 544-45. The Court reasoned, "[a]lthough the arguments are not frivolous, they do not persuade."[12] *Id.* at 544. Instead, the Court held that the *Sisson* framework (i.e., location/connection tests) applied equally to cases "where all of the relevant entities are engaged in similar types of activity" as well as cases "involving land based parties and injuries." *Id.* at 543-45.

A number of federal courts have since recognized that *Grubart* implicitly overruled earlier decisions from other circuits to the extent they were based on four-factor tests similar to the test in *Kelly*. *See, e.g., Gruver v. Lesman Fisheries, Inc.*, 489 F.3d 978, 984 (9th Cir. 2007) (discussing cases from the Fourth and Eleventh Circuits, which utilized four-factor tests, and noting that they were "effectively overruled by *Grubart*" or "later rejected in *Grubart*"); *Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1185 (D. Haw. 2013) (finding that, "in light *Grubart's* specific rejection of the four-factor test and the subsequent case law applying the

---

[12] *See also Grubart*, 513 U.S. at 547-48 ("For better or worse, the case law has thus carved out the approximate shape of admiralty jurisdiction in a way that admiralty lawyers understand reasonably well. As against this approach, so familiar and relatively easy, the proposed four- or seven-factor test would be hard to apply, jettisoning relative predictability for the open-ended rough-and-tumble of factors, inviting complex argument in a trial court and a virtually inevitable appeal. . . . [I]nvoking a district court's admiralty jurisdiction under 28 U.S.C. § 1333 . . . has traditionally been quite uncomplicated. Reasons of practice, then, are as weighty as reasons of theory for rejecting the [petitioners'] call to adopt a multifactor test for admiralty jurisdiction for the benefit of land-based parties to a tort action.").

*Sisson* framework, the multi-factor connection test applied in [the Ninth Circuit] has been effectively overruled by *Sisson* and *Grubart*"); *Conner*, 799 F. Supp. 2d at 464 (observing that various "Pre-*Sisson/Grubart* Cases," including *Oman*, "were made under the *Kelly* framework (or a variant thereof) that the *Grubart* court expressly disavowed"); *McClenahan v. Paradise Cruises, Ltd.*, 888 F. Supp. 120, 123 (D. Haw. 1995) (holding that *Grubart* "specifically rejected multi-factor tests" such as those utilized in the Ninth Circuit).

In sum, the location and connection tests have been satisfied. Plaintiff's exposure occurred during sea-based work bearing a sufficient connection to traditional maritime activities, thus, warranting application of maritime law.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to establish applicable substantive law is denied, and Defendants' motion to establish applicable substantive law is granted. An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: June 4, 2014

Sherry R. Fallon
United States Magistrate Judge