# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: ASBESTOS LITIGATION )
ARTHUR DUMAS, )
 )
  Plaintiff, )
 )
  v. ) Civil Action No. 13-229-SLR-SRF
 )
ABB GROUP, INC., et al., )
 )
  Defendants. )

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action are the motions for summary judgment of Defendants Foster Wheeler LLC ("Foster Wheeler") (D.I. 347), General Electric Company ("GE") (D.I. 349), Owens-Illinois Inc. ("Owens-Illinois") (D.I. 352), Aurora Pump Company ("Aurora") (D.I. 354), Velan Valve Corporation ("Velan Valve") (D.I. 356), Warren Pumps LLC ("Warren") (D.I. 358), Electrolux Home Products Inc., individually and as successor to Copes-Vulcan ("Electrolux" or "Copes-Vulcan") (D.I. 359), CBS Corporation ("CBS") (D.I. 362), Ingersoll Rand Company ("Ingersoll Rand") (D.I. 363), Air & Liquid Systems Corporation, as successor by merger to Buffalo Pumps Inc. ("Buffalo") (D.I. 366), IMO Industries Inc. ("IMO" also referred to as "DeLaval") (D.I. 368), and ABB Inc., as successor in interest to Bailey Meter Co. ("ABB") (D.I. 370) (collectively, "Defendants"). Plaintiff Arthur Dumas ("Plaintiff" or "Mr. Dumas"), opposes Defendants' motions for summary judgment. (D.I. 375; 383; 380; 374; 384; 382; 385; 386; 381; 378; 376; 377) As indicated in the chart *infra* and for the reasons that follow, I recommend that the court GRANT summary judgment as to the following Defendants: Electrolux, ABB, Velan Valve, GE, CBS, Foster Wheeler, and Owens-Illinois. I

recommend that the court DENY summary judgment as to the following Defendants: Buffalo, Ingersoll Rand (denied-in-part), Aurora, IMO, and Warren (denied-in-part).

| Defendant | Motion for Summary Judgment |
|---|---|
| Electrolux Home Products Inc. | GRANT |
| ABB Inc. | GRANT |
| Velan Valve Corporation | GRANT |
| General Electric Company | GRANT |
| CBS Corporation | GRANT |
| Foster Wheeler LLC | GRANT |
| Owens-Illinois Inc. | GRANT |
| Buffalo Pumps Inc. | DENY |
| Ingersoll Rand Company | DENY-IN-PART |
| Aurora Pump Company | DENY |
| IMO Industries Inc. | DENY |
| Warren Pumps LLC | DENY-IN-PART |

## II.     BACKGROUND

### A. Procedural History

Plaintiff filed this personal injury action against Defendants on December 14, 2012, in the Superior Court of Delaware. (D.I. 1, Ex. 1) The complaint asserts that Plaintiff developed asbestosis through his work in the United States Navy from approximately 1954 to 1974. (*Id.*) On February 13, 2013, the case was removed to this court by Defendant Yarway Corporation pursuant to 28 U.S.C. §§ 1442(a)(1)[1] and 1446. (*Id.*) Foster Wheeler, GE, Owens-Illinois, Aurora, Velan Valve, Warren, Electrolux, CBS, Ingersoll Rand, Buffalo, IMO, and ABB individually filed the

---

[1] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

pending motions for summary judgment. (D.I. 347; 349; 352; 354; 356; 358; 359; 362; 363; 366; 368; 370) The motions were fully briefed by September 2014. (D.I. 408; 390; 396; 397; 392; 393; 395; 389; 391; 394; 398; 388) On November 13, 2014, the court held oral argument on the motions.

## B. Facts

Plaintiff alleges that he was exposed to asbestos while serving in the U.S. Navy throughout his career, which lasted approximately twenty years, starting in 1954. (D.I. 348, Ex. A) In 1956, Plaintiff was assigned to the pre-commissioning of the USS Franklin D. Roosevelt (the "FDR"). (*Id.* at 76:21-77:3) Plaintiff described his duties while aboard the FDR as "damage control." (*Id.* at 77:10-78:15) Plaintiff could not recall working on any specific equipment aboard the FDR. (*Id.* at 90:16-18) Plaintiff had no duties in the boiler room or the engine room of the FDR, but believed he was exposed to asbestos through the ventilation system on the ship. (*Id.* at 90:1-93:3)

In June of 1957, Plaintiff left the FDR and was assigned to the reserve fleet in Green Cover Springs, Florida. (*Id.* at 93:4-95:7) Plaintiff believed that he was exposed to asbestos at this time while he was assigned to security detail. (*Id.*)

In September 1958, Plaintiff was assigned to the USS Forrestal (the "Forrestal"), an aircraft carrier. (*Id.* at 81:2-24) While aboard the Forrestal, Plaintiff served for approximately two years at the rank of damage controlman third class. (*Id.*) Plaintiff testified to working on pumps and valves associated with hotel services (hot water, cold water, plumbing, and sewage). (*Id.* at 96:16-102:7) Plaintiff identified possible asbestos exposure from repacking of the valves associated with hotel services and removing insulation from pumps. (*Id.*)

From approximately 1960 to 1963, Plaintiff served aboard the USS Enterprise (the "Enterprise") and was assigned to "precom detail." (*Id.* at 81:25-83:8) Plaintiff could not identify

3

any specific equipment where he could have been exposed to asbestos while aboard the Enterprise. (*Id.* at 102:8-106:5)

From 1963 to 1967, Plaintiff was on shore duty, in various positions, before being assigned to the USS Ogden (the "Ogden"), as a warrant officer. (*Id.* at 83:9-85:24) While assigned to Harbor Defense, Plaintiff believed he may have been exposed to asbestos from old buildings and floor tile but again could not name any specific product or manufacturer. (*Id.* at 106:6-108:2) Plaintiff served on the Ogden until 1969 and testified to having no hands-on responsibilities for any equipment but was responsible for coordinating repairs to equipment such as pumps and valves. (*Id.* at 110:1-115:15)

Plaintiff next served aboard the USS Tidewater (the "Tidewater") until 1971. (*Id.* at 87:7-23) Plaintiff testified that he possibly could have been exposed to asbestos from others working on pumps, valves, and insulation in his vicinity. (*Id.* at 110:1-115:15)

Plaintiff next served aboard the Vulcan for approximately six months before being reassigned to the Forrestal. (*Id.* at 87:24-89:16) Plaintiff's duties aboard the Vulcan were similar to those while aboard the Tidewater. (*Id.* at 123:5-124:10)

In 1971, Plaintiff was reassigned to the Forrestal for a second tour before being transferred to Port Services and later retiring from the Navy. (*Id.* at 124:11-130:4) Plaintiff, again, identified general exposure while aboard the Forrestal from pumps and valves. (*Id.*)

### C. Testimony of Product Identification Witnesses

Plaintiff relies heavily on the testimony of product identification witnesses to support his claims that he was exposed to asbestos directly from Defendants' products and equipment during his time in the Navy while working with insulation, gaskets, and packing.

4

### 1. Edsel Mauldin

Mr. Edsel Mauldin is Plaintiff's principal witness regarding his time serving aboard the Forrestal between 1971 and 1972. (D.I. 375, Ex. A at 42:4-11) Mr. Mauldin had no specific recollection of Plaintiff ever being present while Mr. Mauldin performed maintenance and repair work on any piece of equipment aboard the Forrestal, including the oil shacks or engine room No. 2 where Mr. Mauldin was principally assigned. (*Id.* at 51:23-52:12; 122:6-19) Mr. Mauldin also worked in the Main Machinery Room ("MMR") and testified that Plaintiff, as a duty engineer aboard the Forrestal, would have made rounds in the MMR. (*Id.* at 54:3-9) Mr. Mauldin testified that he personally diagrammed and memorized every system in the engine room which gave him personal knowledge of the equipment aboard the Forrestal. (*Id.* at 217:5-218:1) Mr. Mauldin testified there was a 99% probability that Plaintiff was present when asbestos-containing equipment was worked on because Mr. Dumas, as a duty engineer, was responsible for supervising the areas where Mr. Mauldin worked. (*Id.* at 178:15-184:14)

Mr. Mauldin further testified that the equipment he worked on while aboard the Forrestal utilized asbestos insulation because "nothing else in the world has got those little fibers in it like that...." (*Id.* at 216:5-8) Mr. Mauldin believed that the Navy followed the manufacturers' specifications which, in some instances, required external asbestos insulation to be applied to the machinery on the Forrestal. (*Id.* at 296:17-297:24) In addition to repairs, Plaintiff points to Mr. Mauldin's testimony that the insulation was removed based on a preventative maintenance schedule. (D.I. 386 at 3-4) When removing and replacing gaskets and packing, Mr. Mauldin testified that asbestos would go "everywhere" as a result of using flanges and wire-brushes as well as dusting every piece of equipment with an air-hose. (D.I. 375, Ex. A at 221:2-222:19, 223:18-24, 235:24-236:2)

### 2. Michael Dutridge

Mr. Michael Dutridge served aboard the Forrestal at the same time as Mr. Dumas. (D.I. 355, Ex. F at 21:23-22:15) Plaintiff relies on Mr. Dutridge's testimony that 90% of the gaskets used on the Forrestal were original. (*Id.* at 114:7-11)

### 3. Douglas McWhirter

Mr. Douglas McWhirter testified to his personal knowledge of the repair division aboard the FDR in the engineering space and the insulation that covered piping throughout the ship. (D.I. 380, Ex. D at 40:24-43:25) Mr. McWhirter was aboard the FDR at the same time as Mr. Dumas, however, he never met Plaintiff. (*Id.* at 19:25-20:6, 21:6-13)

### 4. Don Andrews

Mr. Don Andrews served alongside Plaintiff aboard the Enterprise from 1962-1963. (D.I. 386, Ex. F at 17:11-18:22) Mr. Andrews personally witnessed lid removal of the turbines aboard the Enterprise. (*Id.* at 75:14-77:11) Mr. Andrews testified that removal of these lids would cause asbestos dust to become airborne and that there was no way that anyone in the engine rooms could have avoided the dust. (*Id.* at 83:16-22)

### 5. Floyd Methner

Mr. Floyd Methner testified regarding his time working aboard the Forrestal with major generators. (D.I. 383, Ex. C at 322:19-330:11) Mr. Methner recalled the valves of the generators being insulated in asbestos and that the steam end of the generators was also insulated with asbestos. (*Id.*) Mr. Methner further testified that he would remove the asbestos-containing packing from the generators in a process that would take up to two hours and that generated dust. (*Id.*) Mr. Methner believed that Plaintiff would have breathed that dust if he was in the area. (*Id.*)

### 6. Roger Smiley

Mr. Roger Smiley served in the engineering log room aboard the Forrestal from September 1959 to March 1969, and as a machinist mate from March 1960 to June 1962. (D.I. 382, Ex. C at 11:25-14:8) Mr. Smiley's duties as a machinist mate were to keep track of all repairs of all the machinery on the ship. (*Id.* at 13:23-14:3) Mr. Smiley testified that the Forrestal ran on superheated steam at 1200 degrees Fahrenheit, and, thus, required asbestos insulation to enable the men to work on the equipment and to prevent them from being burned. (*Id.* at 67:11-68:6) Mr. Smiley further testified that Plaintiff could not have avoided exposure to asbestos while working on the ship. (*Id.*)

### D. Plaintiff's Alleged Exposure from Each Defendant's Products

### 1. Defendant ABB

Plaintiff claims exposure to Bailey boiler combustion and feed water controls while working in the MRR aboard the Forrestal. (D.I. 377 at 3, Ex. A at 240:8-241:19) Plaintiff relies on Mr. Mauldin's testimony that the Bailey boiler combustion and feed water controls were insulated with asbestos-containing insulation. (*Id.* at 178:15-187:4) Mr. Methner was mentioned in Plaintiff's briefs as a product identification witness of Bailey products, however Mr. Methner has not offered testimony regarding a Bailey product. (D.I. 377 at 3-4, Ex. C at 41:7-16, 140:2-141:6) Rather, Mr. Methner's testimony provides general references to insulation aboard the Forrestal. (*Id.*)

### 2. Defendant Aurora Pump

Plaintiff claims exposure to Aurora pumps during his first and second tours aboard the Forrestal. (D.I. 374 at 1, Ex. A at 101:10-102:4) Plaintiff testified to supervising and participating in packing work and shipyard insulation tearouts on Aurora pumps aboard the Forrestal. (*Id.*) Plaintiff also alleges he was exposed to Aurora pumps aboard the Tidewater where he oversaw the

maintenance and repair of machinery in engine rooms. (*Id.* at 119:12-122:9) Plaintiff testified to exposure to asbestos-containing products from Aurora pump insulation tearouts and gasket seal work. (*Id.*)

In addition, Plaintiff relies on his knowledge of exposure to Aurora's alleged asbestos-containing products during his time on the Forrestal during his first and second tour, when he worked on and witnessed work done on Aurora pumps. (D.I. 374, Ex. A at 101:10–102:4, 126:23–127:5.) Plaintiff testified that while serving on the Tidewater he conducted repairs on 20 to 25 ships working on machinery in engine rooms and that he was exposed to asbestos from Aurora pump insulation tearouts as well as gasket seal work. (*Id.* at 119:12–122:9) Plaintiff testified that he knew Aurora manufactured the various pumps because he reviewed their manuals. (*Id.* at 175:13-176:2) With regard to Aurora pump insulation, Plaintiff testified:

> Q. Okay, and we talked about you being around men who were sawing insulation off Aurora Pump's. That was original insulation, right?
>
> A. When they were installing insulation on pumps, they would more – it was – I would say they pulled the original insulation off and replaced with – new.

(*Id.* at 272:13–23) Mr. Dutridge also testified to this topic:

> Q. Okay. Same questions for Aurora. The packing and insulation was asbestos?
>
> A. Correct.
>
> Q. And 90 percent of it was original to the pumps?
>
> A. Correct.

(D.I. 374, Ex. B at 91:4–10)

Plaintiff also relies on the general testimony of Mr. Mauldin and Mr. Methner regarding the exposure to Aurora's alleged asbestos-containing pumps while aboard the Forrestal as discussed *supra* in section II(c). (*Id.* at 1-6)

### 3. Defendant Buffalo Pumps

Plaintiff claims exposure to Buffalo pumps while conducting packing and original insulation work during his first tour aboard the Forrestal. (D.I. 379 at 1, Ex. A at 101:10-102:4, 175:20-176:3) Plaintiff alleges exposure throughout his entire career and on every ship on which he served (not including the Tidewater and Vulcan), he claims exposure as a result of sweeping up after Buffalo pump insulation tearouts causing him to breathe in asbestos dust. (*Id.* at 274:3-17, 276:4-278:11) Plaintiff also relies on the general testimony of Mr. Mauldin and Mr. Dutridge as discussed *supra* in section II(C). (*Id.*, Ex. C at 216:7-8, 218:7-224:15, Ex. B at 90:11-91:2) Specifically, Mr. Dutridge identified Buffalo pumps and testified that they were insulated with asbestos. (*Id.*, Ex. B at 90:11-91:2)

### 4. Defendant CBS

CBS Corporation (a Delaware corporation f/k/a Viacom Inc.) is a successor by merger to CBS Corporation (A Pennsylvania corporation f/k/a Westinghouse Electric Corporation) ("Westinghouse"). (D.I. 389 at 1 n. 1)

Plaintiff alleges that he was exposed to Westinghouse pumps and turbines in the MMR aboard the Forrestal. (D.I. 386 at 2, Ex. D) Plaintiff relies on the general testimony of Mr. Mauldin and Mr. Dutridge as discussed *supra* in section II(C). (*Id.* at 1-4) Specifically, Mr. Mauldin testified that Westinghouse pumps were insulated with asbestos and used asbestos gaskets and packing. (*Id.* at 3-5, Ex. A at 192:25-195:17, 233:2-234:20, 218:7-224:15, 272:24-273:12) Mr. Dutridge testified that Westinghouse turbines used asbestos-containing insulation, packing, and gaskets aboard the Forrestal. (*Id.* at 5, Ex. C at 93:4-23)

### 5. Defendant Electrolux

Plaintiff's claims against defendant Electrolux relate to alleged exposure to asbestos components relating to Copes-Vulcan desuperheaters. (D.I. 385 at 1, Ex. A at 20:14-21:9) The alleged exposure occurred when Plaintiff was aboard the Forrestal. (*Id.* at 20:14-21:9, 54:3-9, 99:19-100:7, Ex. D) Plaintiff relies on the general testimony of Mr. Mauldin and Mr. Methner as discussed *supra* in section II(C). (*Id.* at 1-4) Mr. Mauldin testified that Copes-Vulcan desuperheaters utilized asbestos-containing insulation, gaskets, and packing. (*Id.* at 2-5, Ex. A at 111:14-112:9, 101:16-101:22, 278:11-280:9) Although Mr. Methner was mentioned in Plaintiff's briefs as a product identification witness of Copes-Vulcan products, Mr. Methner has not offered testimony regarding a Copes-Vulcan desuperheater. (*Id.* at 2-3, Ex. B at 45:23-46:13) Rather, Mr. Methner's testimony describes his opinion of the duration of time Plaintiff spent in the MMR aboard the Forrestal. (*Id.*)

### 6. Defendant Foster Wheeler

Plaintiff alleges he was exposed to asbestos components relating to Foster Wheeler pumps aboard the Forrestal. (D.I. 375 at 1-2, Ex. A at 54:3-9, 166:18-167:13, 178:9-186:1) Plaintiff relies on the general testimony of Mr. Mauldin and Mr. Dutridge discussed *supra* in section II(C). (*Id.* at 1-4) Specifically, Mr. Mauldin testified that Foster Wheeler pumps utilized asbestos-containing insulation, gaskets, and packing. (*Id.* at 3-6, Ex. A at 179:22-184:14, 233:14-15, 220:9-224:15, 235:14-236:16) Foster Wheeler asserts that there were no Foster Wheeler products aboard the Forrestal, as there is no evidence of a contract to furnish equipment, including Foster Wheeler pumps, for use on the Forrestal. (D.I. 408 at 3-4, Ex. D)

10

### 7. Defendant General Electric

Plaintiff alleges he was exposed to asbestos components relating to GE turbines in the MMR aboard the Forrestal. (D.I. 383 at 2, Ex. A at 157:12-159:16) Plaintiff relies on the general testimony of Mr. Mauldin and Mr. Dutridge discussed *supra* in section II(C). (*Id.* at 1-4) Specifically, Mr. Mauldin testified that GE turbines utilized asbestos-containing insulation, gaskets, and packing. (*Id.* at 2-4, Ex. A at 179:22-184:14, 259:10-264:6, 259:10-264:6) Plaintiff also relies on Mr. Methner's testimony that GE 1500 Kilowatt generators had valves that were insulated with asbestos. (*Id.* at 4, Ex. C at 322:19-330:11) Mr. Methner would remove asbestos-containing packing on GE generators and he believed the process would have caused Plaintiff to breathe asbestos-containing dust if he was in proximity to the area at the time Mr. Methner worked on GE generators. (*Id.*)

### 8. Defendant IMO

Plaintiff alleges that he was exposed to IMO ("DeLaval") pumps while aboard several different ships throughout his career. (D.I. 376 at 1-3) Plaintiff alleges exposure to DeLaval pumps while serving aboard the FDR in 1956. (*Id.*, Ex. A at 89:24-90:15) Plaintiff relies on Mr. McWhirter's testimony that DeLaval pumps aboard the FDR utilized asbestos packing. (D.I. 376 at 6, Ex. G at 107:20-108:4, 114:9-115:16, 122:18-25) Plaintiff alleges exposure to DeLaval pumps aboard the Forrestal during his first tour from 1958 to 1960. (D.I. 376, Ex. A at 101:10-102:4) However, Plaintiff testified to only tightening "a packing gland" on a DeLaval fire main pump. (*Id.* at 98:8-12, 214:4-7) Plaintiff alleges exposure to DeLaval pumps while serving aboard the Enterprise from 1960 to 1963. (*Id.* at 102:8-11, 103:3-15) However, Plaintiff testified to entering the engine rooms, where DeLaval pumps were located, on only one occasion. (*Id.* at 103:3-25) Plaintiff alleges exposure to DeLaval pumps through external asbestos-containing insulation while

serving aboard the Ogden from 1967 to 1969. (*Id.* at 112:18-113:21) Plaintiff was present during the removal and reinstallation of the insulation applied to DeLaval pumps aboard the Ogden. (*Id.*) Plaintiff alleges exposure to DeLaval pumps while serving aboard the Tidewater from 1969 to 1971. (*Id.* at 119:12-122:9) Plaintiff testified to conducting and supervising repair work on 20-25 other ships based out of the repair shop on the Tidewater. (*Id.*) During the repair work, Plaintiff testified to being exposed to asbestos from DeLaval pump insulation tearouts and gasket seal work. (*Id.*) Finally, Plaintiff alleges exposure to DeLaval pumps' asbestos-containing components while serving aboard the Forrestal during his second tour from 1971 to 1974. (*Id.* at 175:13-176:3)

Plaintiff also relies on the general testimony of Mr. Mauldin as discussed *supra* in section II(C). (*Id.* at 2-7) Specifically, Mr. Mauldin testified that DeLaval pumps utilized asbestos insulation, gaskets, and packing aboard the Forrestal. (D.I. 376 at 4-7, Ex. C at 179:22-184:14, 218:7-224:15, 255:7-256:22, 271:22-273:12)

### 9. Defendant Ingersoll Rand

Plaintiff's claims against Ingersoll Rand relate to reciprocating emergency feed pumps in the MMR aboard the Forrestal. (D.I. 381 at 1, Ex. A at 268:12-270:12, 178:15-184:4) Plaintiff relies on the general testimony of Mr. Mauldin and Mr. Methner discussed *supra* in section II(C). (D.I. 381 at 1-4) Specifically, Mr. Mauldin testified that Ingersoll Rand pumps utilized asbestos-containing insulation. (*Id.*, Ex. A at 179:22-184:14, 269:9-17) Mr. Methner testified that Ingersoll Rand pumps utilized asbestos-containing gaskets and packing. (D.I. 381 at 3-5, Ex. B at 311:20-312:23, 309:8-310:19)

### 10. Defendant Owens-Illinois

Plaintiff alleges that he was exposed to Owens-Illinois asbestos-containing insulation while serving on the FDR in 1956 and part of 1957. (D.I. 380 at 1-2, Ex. C at 89:24-90:15, Ex. D 40:24-

12

43:25) Owens-Illinois began a limited pilot plan operation in 1943 to manufacture Kaylo, an asbestos-containing pipe covering. (D.I. 380, Ex. A) It began commercial production and sale of its Kaylo product in 1948. (*Id.*) The entire Kaylo division, including inventory, was sold to Owens Corning Fiberglas Corporation ("Owens Corning") on April 30, 1958. (D.I. 380, Ex. B at 1-4)

Plaintiff relies solely on the testimony of Mr. McWhirter who testified that there were miles of insulated piping running throughout the FDR. (D.I. 380 at 2, Ex. D at 40:24-43:25) Mr. McWhirter testified that this insulation was manufactured by Owens-Illinois. (*Id.*) Mr. McWhirter and his shipmates would have to remove this insulation in order to work on the machinery aboard the ship as well as reinstall it. (*Id.*) Mr. McWhirter testified that the operation of the ship alone would make asbestos dust from Owens-Illinois insulation go airborne. (*Id.*) Plaintiff argues that based on Mr. McWhirter's testimony, it is highly likely that Plaintiff would have breathed a substantial amount of asbestos dust from original Owens-Illinois insulation during the yard period, as heavy maintenance was conducted. (D.I. 380 at 5, Ex. D at 123:6-23)

## 11. Defendant Velan Valve

Plaintiff alleges that he was exposed to asbestos-containing components relating to Velan valves in the MMR aboard the Forrestal. (D.I. 384 at 1-2, Ex. A at 177:22-178:16) Plaintiff relies on the general testimony of Mr. Mauldin as discussed *supra* in section II(C). (D.I. 384 at 1-5) Specifically, Mr. Mauldin testified that Velan valves utilized asbestos-containing insulation on the flange shields, flange gaskets, and packing. (*Id.*, Ex. A at 311:5-312:9) Plaintiff also relies on Mr. Methner's testimony that manufacture specification sheets required external asbestos insulation on equipment aboard the Forrestal. (D.I. 384 at 3-4, Ex. E at 194:15-195:9) However, Mr. Methner's testimony is not specific to Velan valves. (*Id.*)

### 12. **Defendant Warren Pumps**

Plaintiff alleges that he was exposed to asbestos-containing components relating to Warren main feed pumps in the MRR aboard the Forrestal. (D.I. 382 at 1-2, Ex. A at 177:22-178:16) Plaintiff relies on the general testimony of Mr. Mauldin as discussed *supra* in section II(C). (D.I. 382 at 1-6) Specifically, Mr. Mauldin testified that Warren pumps utilized asbestos-containing insulation, gaskets, and packing. (*Id.*, Ex. A at 143:21-144:13, 233:2-234:20, 270:13-273:20) Plaintiff also relies on Mr. Methner's testimony regarding manufacture specification sheets, however there is no identification of Warren pumps. (D.I. 382, Ex. D at 194:15-195:9)

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed

material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

### A. Applicable Law

After considering the parties' choice of law arguments (D.I. 322; 323), the court concluded that maritime law should apply to Plaintiff's claims relating to his asbestos exposure that allegedly occurred while he served in the U.S. Navy.[2] (D.I. 345)

---

[2] In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

In each of the pending summary judgment motions, Defendants contend that summary judgment should be granted because Plaintiff has not shown that Defendants' products were a substantial factor in causing his injuries and Defendants did not manufacture or distribute the allegedly asbestos-containing products. (D.I. 348; 350; 353; 355; 357; 361; 360; 364; 365; 367; 369; 374)

To establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor[3] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. Appx. 371, 375 (6th Cir. 2001)). Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[4] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of

---

*Grubart*, 513 U.S. at 534 (internal citations omitted); *see also Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131-32 (3d Cir. 2002).

[3] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[4] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[5] *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. Appx. at 376).

On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. Appx. at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. Appx. at 376 (citations omitted).

Should the court decide that causation has been established, Defendants rely upon the "bare metal" defense to avoid liability on the basis that they have no duty to Plaintiff relating to asbestos-containing replacement parts they did not manufacture or distribute. *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801-802 (E.D. Pa. 2012) (explaining the policy rationale for holding only those who make or sell the injurious product liable for the injuries alleged). "The so-called 'bare metal defense' is recognized by maritime law, such that a manufacturer has no liability for harms caused by—and no duty to warn about hazards associated with—a product it did not manufacture or distribute." *Carper v. Gen. Elec. Co.*, 2014 WL 6736205, at *1 (E.D. Pa. Sept. 4, 2014) (citing

---

[5] However, "'*substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. Appx. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

*Conner*, 842 F.Supp.2d at 801).

## B. Analysis of Defendants' Summary Judgment Motions

Plaintiff puts forth three main arguments as to why summary judgment should be denied with respect to each moving Defendant: (1) there is a genuine issue of material fact as to whether Defendants' asbestos-containing products were a substantial factor in causing Plaintiff's asbestosis; (2) there is a genuine issue of material fact as to whether each Defendant had a duty of care to warn Plaintiff of foreseeable asbestos exposure resulting from asbestos-containing products it or another manufacturer supplied; and (3) there is a genuine issue of material fact as to whether there existed a design defect in each Defendant's product, and Defendants failed to warn Plaintiff of the foreseeable harms resulting from its asbestos-containing products and the asbestos products of other manufacturers.[6] (D.I. 375; 383; 380; 374; 384; 382; 385; 386; 381; 378; 376; 377)

### 1. Defendant Electrolux

The court should grant Electrolux's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether Electrolux's product was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff alleges that he was exposed to asbestos-containing products used in connection with Copes-Vulcan desuperheaters while serving aboard the Forrestal. (D.I. 385 at 1) Namely,

---

[6] Against Ingersoll Rand and Warren Pumps, Plaintiff alleges a fourth argument that summary judgment should be denied regarding Plaintiff's punitive damages claim. (D.I. 381 at 14-17; D.I. 382 at 13-16) However, Plaintiff provides no argument or legal theory in support of this argument. (*Id.*) Rather, Plaintiff generically cites the expert report of David Rosner attached to his answering brief. (D.I. 381, Ex. H; D.I. 382, Ex. H) Viewing the facts in the light most favorable to Plaintiff, Plaintiff has not made a sufficient showing on an essential element of his case on which Plaintiff bears the burden of proof. I recommend that the motions for summary judgment of Ingersoll Rand and Warren Pumps be granted in part regarding Plaintiff's punitive damages claims.

18

Plaintiff relies on Mr. Mauldin's testimony that Copes-Vulcan desuperheaters utilized asbestos insulation on pipes connected to the machinery and from desuperheater gaskets. (*Id.* at 2-5) Mr. Mauldin believed Plaintiff would have been exposed to asbestos through unspecified work on Copes-Vulcan products based on his Navy occupation rating. (*Id.*) Mr. Mauldin never worked on desuperheaters while aboard the Forrestal and never saw Plaintiff working on or in the proximity to anyone working on a Copes-Vulcan product.[7] (*Id.*) Mr. Mauldin testified to seeing work on desuperheaters only once during his entire service aboard the Forrestal. (*Id.*) Even assuming that the evidence from Plaintiff's product identification witness is sufficient to meet the threshold for exposure to Copes-Vulcan's product, there is no evidence which places Plaintiff in the vicinity of any Copes-Vulcan product while it was worked on during his service on the Forrestal. (D.I. 385)

Plaintiff further argues that Electrolux is responsible for the effects of any exposure relating to its products, whether original or replacement parts, regardless of the manufacturer. The "bare metal" defense supports the recommendation that Electrolux should not be liable for any product it did not manufacture or distribute. *See Conner*, 842 F. Supp. 2d at 801; *see also Cabasug v. Crane Co.*, 989 F. Supp. 2d 1027 (D. Haw. 2013) (following *Conner* line of reasoning, holding "a manufacturer is not liable for replacement parts that it did not place into the stream of commerce, whether the manufacturer's product originally contained asbestos components or was designed to include asbestos components.").[8]

---

[7] Mr. Mauldin had no specific recollection of Plaintiff ever being present while he or anyone else performed maintenance or repair work on any piece of equipment aboard the Forrestal. (D.I. 348, Ex. A at 51:23-52:12, 122:6-19)

[8] There is an internal inconsistency in Plaintiff's argument wherein Plaintiff contends Defendants' products contained original asbestos insulation aboard the Forrestal fifteen years after it was commissioned to active service, while also asserting that all equipment aboard the Forrestal was regularly repaired and replaced as a matter of the routine preventative maintenance schedule. (D.I. 350 at 4) The trouble with Plaintiff's arguments is the inability to reconcile

Plaintiff's contention that Electrolux supplied asbestos-containing equipment or specified use of asbestos with its product is not supported by the record. Plaintiff's claim is based substantially on selected responses to general questions taken from the deposition testimony of Mr. Methner. (D.I. 385 at 12) However, Mr. Methner offered no testimony regarding Copes-Vulcan or the desuperheaters which Plaintiff alleges are the source of his alleged exposure. (D.I. 395 at 9) "It is entirely possible that the dust to which Plaintiff was exposed was from replacement insulation that did not contain asbestos and/or that was not manufactured or supplied by [Electrolux]." *Carper*, 2014 WL 6736205, at *1. Plaintiff has done nothing more than show the presence of Electrolux desuperheaters aboard the Forrestal. Moreover, the desuperheaters were located in the boiler room, whereas the allegations place Plaintiff in the MRR space as the duty engineer.

While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture. *See Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011) (citations omitted). Consequently, I recommend granting Electrolux's motion for summary judgment dismissing all claims. *See Lindstrom*, 424 F.3d at 492 ("[A] mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient [to establish causation]).

---

whether the original asbestos-containing components remained on the ship for fifteen years or the components were routinely repaired and replaced at regular intervals.

## 2. Defendant ABB

I recommend that the court grant ABB's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether ABB's product was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff alleges that exposure to asbestos through boiler combustion and feedwater controls manufactured or sold by ABB (Bailey Meter Co.) while aboard the Forrestal was a substantial factor in his asbestosis. (D.I. 377) However, ABB asserts that Bailey never manufactured boilers or insulation. (D.I. 388 at 1) Plaintiff's reliance on the testimony of Mr. Mauldin, Mr. Smiley, and Mr. Methner is unpersuasive. There is no testimony about Bailey boiler combustion controls from Mr. Smiley or Mr. Methner. (D.I. 377, Ex. B at 32:21-71:1, Ex. C at 40:13-41:16, 45:20-46:13, 78:14-80:11, 139:19-140:6) There is no evidence that Bailey ever "manufactured and/or supplied" any insulation in regards to boilers and combustion and feedwater controls as alleged by the testimony of Plaintiff's product identification witnesses.

Plaintiff's exposure claim arising from Bailey controls is based upon general allegations of Mr. Mauldin that three quarters of the insulation installed on machinery on the Forrestal was original, thus, work performed on Bailey controls made asbestos dust go airborne. (*Id.* at 3, Ex. A at 195:25-196:9) The Plaintiff relies on an inference that if it is assumed that the Plaintiff was present during the time dust was released due to work performed on Bailey controls, then ABB may be liable. (*Id.* at 12, Ex. A at 195:25-196:9, 179:22-187:4) Plaintiff's assertion is insufficient for purposes of summary judgment. *See Lindstrom*, 424 F.3d at 492.

As discussed *supra* in section IV(B)(1), Plaintiff has failed to show beyond mere speculation and conjecture that he was exposed to asbestos from products manufactured or

supplied by ABB. Consequently, the recommendation herein is to grant ABB's motion for summary judgment. *See id.*

### 3.Defendant Velan Valve

The court should grant Velan Valve's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether Velan Valve's product was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff relies primarily on the testimony of Mr. Mauldin and Mr. Dutridge regarding Velan Valve products aboard the Forrestal. (D.I. 384 at 1-4) However, no witness could testify that Plaintiff ever worked in the vicinity of any Velan Valve product during Plaintiff's time aboard the Forrestal. Plaintiff submits evidence that there were about 396 Velan Valves in the MMR aboard the Forrestal (two transfer valves for each of 198 fuel tanks). (D.I. 357, Ex. G at 116:13-15) Plaintiff primarily relies on Mr. Mauldin's testimony that the valves utilized asbestos packing. (11/13/14 Tr. at 26:24-29:3) Removal of the packing caused asbestos dust to become airborne as it came out in pieces and the rest was blown out with an air hose. (*Id.*) However, Mr. Mauldin testified that the ship had been through overhauls several times in the number of years it was in service. (Mauldin Dep. Tr. at 62:1-63:20) Thus, there is no evidence of record to support whether any packing removed from Velan valves was the original asbestos-containing component applied by the manufacturer.

Plaintiff relies on the testimony of Mr. Dutridge for the factual support that ninety percent of the asbestos-containing components were original to the equipment aboard the Forrestal. (D.I. 384, Ex. F at 90:11-91:13) However, Mr. Dutridge's ninety percent reference relates to insulation, not packing. (*Id.* at 88:4-89:6) Therefore, viewing the evidence most favorably to Plaintiff, there is only a "mere showing that defendant's product was present somewhere at plaintiff's place of

22

work." *Walkup v. Air & Liquid Sys. Corp.*, 2014 WL 4447568, at \*1 (D. Del. Sept. 8, 2014) (quoting *Lindstrom*, 424 F.3d at 492).

As discussed *supra* in section IV(B)(1), Plaintiff has failed to show beyond mere speculation and conjecture that he was exposed to asbestos from products manufactured or supplied by Velan Valve. Consequently, the court should grant Velan Valve's motion for summary judgment. *See Lindstrom*, 424 F.3d at 492.

### 4. Defendant GE

The court should grant GE's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether GE's product was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff relies primarily on the testimony of Mr. Mauldin for product identification and causation. (D.I. 383 at 1-5) It is undisputed that there were GE turbines and generators on board the Forrestal. (D.I. 390 at 2-4) However, none of Plaintiff's product identification witnesses observed Plaintiff near a GE product or observed any work being performed on GE Products. Mr. Mauldin offers testimony about dust created when insulation on the generators were replaced. (D.I. 383 at 2-3, Ex. A at 179:22-184:14, 259:10-264:6) From such testimony, Plaintiff argues that the issue of Plaintiff's exposure to asbestos from GE products should be decided by the jury. (*Id.* at 7-9) However, Plaintiff presents no evidence as to whether GE specified the use of asbestos-containing insulation on its turbines. Thus, the presence of GE products on board the ship is not sufficient to create a material issue of fact.

As discussed *supra* in section IV(B)(1), Plaintiff has failed to show beyond mere speculation and conjecture that he was exposed to asbestos from products manufactured or

supplied by GE. Consequently, the court should grant GE's motion for summary judgment. *See Lindstrom*, 424 F.3d at 492.

### 5. Defendant CBS

The court should grant CBS' motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether CBS' product was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff relies primarily on the testimony of Mr. Mauldin and Mr. Dutridge regarding his alleged exposure to original CBS (Westinghouse) pumps and turbines. (D.I. 386 at 2-6) Mr. Mauldin recalls Westinghouse pumps aboard the Forrestal in both the MMR and the pump rooms. He has no specific recollection of whether Plaintiff was ever present during work on Westinghouse fire pumps. (*Id.* at 2, Ex. A at 67:9-70:21) Mr. Mauldin concludes that because of Plaintiff's responsibilities as a duty engineer, Plaintiff would have been around Westinghouse fire pumps while others worked on them. (*Id.*) Mr. Dutridge remembers work being done on Westinghouse equipment on only one occasion. (D.I. 364, Ex. F at 70:6-25; 85:13-86:3) Mr. Dutridge offers no testimony that places Plaintiff in the vicinity of Westinghouse propulsion turbines (not fire pumps) on the one instance when he recalls work was performed on the turbines. (*Id.*)

Assuming Westinghouse machinery, whether turbines or fire pumps, was present aboard the Forrestal, Plaintiff has not produced evidence sufficient to create a genuine issue of fact as to whether he was substantially exposed to respirable asbestos dust from any insulation installed, manufactured, or supplied by Westinghouse.

Plaintiff has offered no evidence as to whether any Westinghouse equipment aboard the Forrestal contained any asbestos insulation or packing original to the equipment. Mr. Maudlin's testimony that several overhauls of the ship took place during the time it was in service conflicts

24

with Mr. Dutridge's testimony that ninety percent of the asbestos-containing insulation was original to the pumps. (D.I. 386, Ex. A at 62:1-63:20; Ex. C at 90:11-91:13) Methner testified that he read specification sheets requiring asbestos insulation on pumps, but could not confirm with certainty that he reviewed a Westinghouse specification sheet. (D.I. 386, Ex. F at 302:12-303:9) Although Westinghouse product identification aboard the Forrestal is established, the evidence in the record fails to create a material issue of fact concerning the substantial exposure requirement.

As discussed *supra* in section IV(B)(1), Plaintiff has failed to show beyond mere speculation and conjecture that he was exposed to asbestos from products manufactured or supplied by CBS. Consequently, the court should grant CBS' motion for summary judgment. *See Lindstrom*, 424 F.3d at 492.

### 6. Defendant Foster Wheeler

The court should grant Foster Wheeler's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether Foster Wheeler's product was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff relies on the testimony of Mr. Mauldin, as discussed above. Plaintiff further argues that documents produced by Foster Wheeler show that they knew Foster Wheeler pumps would be used in high heat applications and that the pumps needed asbestos-containing components. (D.I. 375, Ex. F) However, the Foster Wheeler documents produced do not pertain to the Forrestal, where Plaintiff alleges exposure, and therefore they cannot be used to support claims pertaining to Foster Wheeler pumps aboard the Forrestal.[9] (D.I. 408 at 7)

---

[9] Foster Wheeler contends that there were no Foster Wheeler pumps present aboard the Forrestal. (D.I. 408 at 7)

Mr. Mauldin's testimony does not demonstrate that a genuine issue of material fact exists concerning Plaintiff's alleged exposure to a Foster Wheeler product. (D.I. 375, Ex. A at 28:24-30:17) Although Mr. Mauldin testified that he worked with machinery, which could have included Foster Wheeler boilers and products manufactured by any named Defendant, Mr. Mauldin failed to identify an instance in which Plaintiff was exposed to asbestos as a result of a Foster Wheeler product. (*Id.* at 177:1-179-17, 176:3-179:14) Plaintiff was not responsible for making repairs while he and Mr. Mauldin were aboard the Forrestal together. (*Id.* at 176:1-17)

Mr. Mauldin also testified that he is almost certain Plaintiff would have been in the room while someone was working on machinery, but he does not identify a time when he or Plaintiff worked on a Foster Wheeler boiler or pump in particular. (*Id.* at 177:22-178:7) Mr. Mauldin has no specific recollection as to witnessing Plaintiff oversee work on a Foster Wheeler boiler, stating that he never personally saw Plaintiff working with or supervising maintenance to Foster Wheeler products. (*Id.* at 70:9-21) Mr. Mauldin admitted that it was not his job to keep track of Plaintiff. (*Id.* at 175:25-176:2) Furthermore, although Mr. Mauldin testified that servicemen could have worked on machinery at port different from that which they had originally been assigned, Mr. Mauldin testified that Plaintiff would not have been around during those repairs. (*Id.* at 293:2-19)

Mr. Mauldin did testify as to personally working on pumps containing insulation; however Mr. Mauldin did not specifically identify any pump as manufactured by Foster Wheeler, nor did he testify as to personal knowledge of Plaintiff working on a Foster Wheeler product containing asbestos. Mr. Mauldin was ninety-nine percent sure Plaintiff breathed asbestos dust while on the Forrestal, but at no time did he identify Foster Wheeler as the manufacturer of a product that caused such exposure. Mr. Mauldin made generalized affirmations of Plaintiff's exposure to products of all named Defendants when prompted by Plaintiff's counsel.

26

Moreover, Plaintiff could not identify Foster Wheeler as the manufacturer of any boiler on any of the ships on which he served. (D.I. 348, Ex. A 198:9-13) Plaintiff did not testify that he personally worked with any Foster Wheeler boiler while aboard the Forrestal. (*Id.* at 198:18-21)

This court should grant Foster Wheeler's motion for summary judgment on the threshold issue of lack of product identification. The evidence presented by Plaintiff in opposition to the motion fails to show that a material issue of fact exists as to the presence of any Foster Wheeler product that would have exposed Plaintiff to asbestos aboard the Forrestal.

Under Rule 56(c)(1)-(4), the opposing motion for summary judgment must offer evidence that a genuine issue of material fact exists. In the instant case, Plaintiff relies exclusively on Mr. Mauldin's testimony to establish product identification. Mr. Mauldin's testimony consists of an affirmative response to Plaintiff's counsel's question identifying the name of Foster Wheeler among numerous other Defendants listed in the question:

Q:     All right. So if we were to summarize what we just talked about, there's a 99-
       percent chance that Mr. Dumas breathed the asbestos dust from these products?

A:     I would say yes.

(D.I. 375, Ex. A at 185:712)

This question was posed following lengthy questioning of Mr. Mauldin wherein he made no identification on his own of the presence of a Foster Wheeler product aboard the Forrestal. (D.I. 375, Ex. A at 183:7-185:5) In the absence of any other evidence of product identification in the record, Plaintiff fails to satisfy his obligation under Rule 56(c).

As discussed *supra* in section IV(B)(1), Plaintiff has failed to show beyond mere speculation and conjecture that he was exposed to asbestos from products manufactured or supplied by Foster Wheeler. The "mere showing that [Foster Wheeler's] product was present

somewhere at plaintiff's work is insufficient." *Lindstrom*, 424 F.3d at 492. Consequently, the court should grant Foster Wheeler's motion for summary judgment. *See id.*

### 7. Defendant Owens-Illinois

The court should grant Owens-Illinois' motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether Owens-Illinois' product was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff relies solely on the testimony of Mr. McWhirter regarding his personal knowledge of the Owens-Illinois (Owens-Corning) alleged asbestos-containing insulation running throughout the FDR piping systems. (D.I. 380, Ex. D 40:24-43:25) Mr. McWhirter also testified that Plaintiff was likely to breathe in respirable dust from original Owens-Illinois (Owens-Corning) insulation during the yard period. (*Id.* at 40:1-43:25) However, Mr. McWhirter did not know Plaintiff or what Plaintiff's duties were aboard the FDR. (*Id.* at 25:6-14) There is no evidence that Plaintiff ever worked with, or was present when someone else worked on Owens-Illinois (Kaylo) products aboard the FDR.

Construing the evidence in the light most favorable to Plaintiff, the record demonstrates that pipe insulation on the FDR included the Owens-Illinois brand supplied by Owens Corning. (*Id.* at 2, Ex. D at 40:24-43:25) Furthermore, removal and replacement of the insulation created dust in all areas of the ship, according to Mr. McWhirter. (*Id.*) However, no evidence exists that Plaintiff was exposed to asbestos dust from any insulation manufactured or supplied by Owens-Illinois. No evidence places Plaintiff in the vicinity of respirable dust from pipe insulation.

These facts are similar to the facts set forth in *Lenig v. Cleaver Brooks Co.* In that case, witness testimony and documentary evidence revealed that asbestos pipe insulation removal, replacement, and installation work was performed during the relevant time period, creating dust

throughout the whole ship, but no witness personally knew the plaintiff. *Lenig v. Cleaver Brooks Co.*, 2015 WL 5683137, at *2 n.1 (E.D. Pa. March 4, 2015). In granting summary judgment, the court observed that there was no evidence the plaintiff was exposed to respirable asbestos dust from any insulation manufactured or supplied by the defendant, because no evidence placed the plaintiff in the vicinity of respirable asbestos from the pipe insulation, and no evidence showed that the old insulation being removed was manufactured or supplied by the defendant. *Id.* As a result, the court declined to find that Owens-Illinois insulation was a substantial factor in the development of the plaintiff's illness, because such a finding would be based on conjecture. *Id.*

As discussed *supra* in section IV(B)(1), Plaintiff has failed to show beyond mere speculation and conjecture that he was exposed to asbestos from products manufactured or supplied by Owens-Illinois. Consequently, the court should grant Owens-Illinois' motion for summary judgment. *See Lindstrom*, 424 F.3d at 492.

### 8. Defendant Buffalo

The court should deny Buffalo's summary judgment motion because Plaintiff is able to demonstrate that there is a material issue of fact as to whether Plaintiff's injuries were caused by asbestos-containing gaskets and packing in Buffalo pumps. *See Lindstrom*, 424 F.3d at 492. Plaintiff has presented sufficient circumstantial evidence to create a fact issue for the jury as to whether Buffalo supplied the original asbestos-containing gaskets and packing in its pumps, and that Plaintiff was substantially exposed to this asbestos.

Plaintiff identified Buffalo pumps being used on the Forrestal during both of his tours. (D.I. 378, Ex. A at 101:10-102:4, 175:25-176:1) Plaintiff testified to his knowledge of Buffalo pumps because he reviewed their manuals. (*Id.* at 175:13-176:2) Mr. Mauldin also testified that he personally memorized and diagrammed every system in the engine room aboard the Forrestal so

he could accurately describe Buffalo products. (D.I. 378, Ex. C at 216:21-218:1) He also remembers Buffalo pumps because the pumps had metal nametags attached to them. (*Id.* at 135:19-25) Mr. Mauldin was present during the pump repair process, and testified to working on Buffalo pumps in each section of the MMR. (*Id.* at 209:23-224:15) Mr. Mauldin also testified that Plaintiff would have been exposed in the machinery space where work was done with asbestos parts for at least eight hours per day, five to seven days a week, creating a fact issue regarding substantial exposure. (*Id.* at 209:23-224:15)

The testimony of Mr. Methner and Mr. Smiley supports Plaintiff's claim of substantial exposure to Buffalo pumps. Specifically, Plaintiff relies on testimony that specification sheets used aboard the Forrestal required external asbestos insulation to be applied to the machinery because the Forrestal ran on superheated steam at 1200 degrees Fahrenheit. (D.I. 378, Ex. F at 194:15-195:9, 281:12-282:2; Ex. E at 67:11-68:6) Moreover, a genuine issue of material fact exists as to whether Plaintiff's alleged exposure was a substantial factor in causing his injuries based on the testimony of Mr. Dumas, Mr. Dutridge, Mr. Mauldin, and Mr. Methner. Mr. Dumas testified that the pumps were original to the Forrestal, and Mr. Dutridge reviewed the manuals and determined that the insulation, packing, and gaskets were original to the Buffalo pumps. (D.I. 378, Ex. A at 271:11-272:4; Ex. B at 90:11-91:2, 112:21-24) Mr. Mauldin and Mr. Methner estimated that between seventy-five and eighty percent of the insulation was original from the time of installation. (D.I. 378, Ex. C at 192:25-196:19; Ex. F at 41:7-16)

Viewed in the light most favorable to Plaintiff, the jury or fact finder could decide that Buffalo supplied the original, asbestos-containing gaskets and packing inside its pumps, and that Plaintiff experienced substantial exposure to Buffalo's asbestos-containing products, raising a genuine issue of material fact with respect to Buffalo's liability for Plaintiff's injuries. Therefore,

the court should deny Buffalo's summary judgment motion with respect to Plaintiff's injuries allegedly caused by exposure to asbestos-containing gaskets and packing in Buffalo's pumps.

### 9.Defendant Aurora

The court should deny Aurora's summary judgment motion with respect to whether Plaintiff was exposed to asbestos-containing gaskets and packing in Aurora pumps such that it was a substantial factor in causing his injuries. *See Lindstrom*, 424 F. 3d at 492. Plaintiff has presented circumstantial evidence showing that Aurora supplied the original, internal asbestos-containing gaskets and packing in its pumps, and that Plaintiff was exposed to this asbestos.

Plaintiff testified specifically that from 1958-1960, he was exposed to asbestos on the Forrestal when he had to replace the packing and insulation on Aurora pumps. (D.I. 374, Ex. A at 101:1-102:4) Although he could not remember which pump was which, he specifically identified and remembered working with Aurora pumps; he knew they were on the ship. (*Id.* at 300:3-9, 101:10-102:7) Plaintiff testified that he oversaw repairs and maintenance to these pumps. (*Id.* at 111:13-112:22) He recalled that the insulation that had to be sawed off Aurora pumps was original asbestos insulation. (*Id.* at 272:13-21) He testified that he supervised workers who would "pull the pump out, take it to the shop, rebuild [to] specifications, and then get it back into the shop and line...and then re-cover it." (*Id.* at 112:23-113:6) There were times when he was there while workers were taking the insulation off, and other times he was there when they were putting the pump back together. (*Id.* at 113:8-10). He testified that he oversaw work on Aurora pumps that included pulling insulation, relining pumps, or replacing seals on pumps. (*Id.* at 121:3-122:9) He testified that after those work events, asbestos "was all over." (*Id.*) Moreover, he identified Aurora when he recalled looking at their manuals dealing with pumps that he was responsible for on the Forrestal. (*Id.* at 175:13-176:2)

31

Viewed in a light most favorable to the Plaintiff, the jury or fact finder could decide that Aurora supplied the original, asbestos-containing gaskets and packing inside its pumps, which raises a genuine issue of material fact with respect to Aurora's liability for Plaintiff's injuries. Therefore the court should deny Aurora's summary judgment motion with respect to Plaintiff's injuries allegedly caused by exposure to asbestos-containing gaskets and packing in Buffalo pumps.

### 10. Defendant Ingersoll Rand

The court should deny Ingersoll Rand's summary judgment motion[10] because Plaintiff is able to demonstrate that there is a material issue of fact as to whether Plaintiff's injuries were caused by asbestos-containing gaskets and packing in Ingersoll Rand's pumps such that the exposure was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F. 3d at 492. Plaintiff has presented circumstantial evidence showing that Ingersoll Rand supplied the original, internal asbestos-containing gaskets and packing in its pumps, and that Plaintiff was substantially exposed to this asbestos.

Plaintiff relies on the testimony as discussed *supra* in section II(C) as well as the specific testimony of Mr. Mauldin, who recalled working with Ingersoll Rand reciprocating emergency feed pumps in the MMR; Mr. Methner, who recalled eight steam driven Ingersoll Rand pumps in the main spaces and additional ones in the auxiliary spaces; and Mr. Dutridge, who worked on Ingersoll Rand pumps while Plaintiff was on board the Forrestal. (D.I. 381 at 8-12) Mr. Methner testified that Ingersoll Rand pumps originally came with asbestos packing in them; the packing was a lead foil type with asbestos and cloth that was specifically used because it did not damage

---

[10] However, see n.6, *supra*, granting Ingersoll Rand's motion in part as to Plaintiff's punitive damages claim.

the rotating shaft. (D.I. 381, Ex. B at 320:12-23, 321:6-322:18) Additionally, Mr. McWhirter testified that Plaintiff would have breathed substantial amounts of asbestos dust from original Ingersoll Rand booster pump packing during the Bremerton yard period in 1956, as heavy maintenance was conducted aboard the FDR. (D.I. 380, Ex. D at 107:10-108:9, 131:19-132:6, 142:3-25)

Plaintiff argues that Ingersoll Rand supplied equipment for high heat application. (*Id.*) Plaintiff alleges that the bare metal defense does not apply because based on Mr. McWhirter's testimony, Ingersoll Rand shipped its pumps with asbestos packing in them—packing which was comprised of a lead foil type with asbestos and cloth material. (D.I. 380, Ex. B at 220:12-23, 321:6-322:18) Plaintiff alleges Ingersoll Rand knew that asbestos-containing products would be used in conjunction with its products. (D.I. 381 at 13).

Viewed in a light most favorable to Plaintiff, the jury or fact finder could decide that Ingersoll Rand supplied the original, asbestos-containing gaskets and packing inside its pumps, raising a genuine issue of material fact with respect to Ingersoll Rand's liability for Plaintiff's injuries.

### 11. Defendant IMO

The court should deny IMO's summary judgment motion because Plaintiff is able to demonstrate that there is a material issue of fact as to whether Plaintiff's injuries were caused by asbestos-containing gaskets and packing in IMO (DeLaval) pumps such that the exposure was a substantial factor in causing Plaintiff's injuries. *See Lindstrom*, 424 F. 3d at 492. Plaintiff has presented circumstantial evidence showing that IMO supplied the original, internal asbestos-containing gaskets and packing in its pumps, and that Plaintiff was exposed to this asbestos.

Plaintiff relies on the testimony as discussed *supra* in section II(C) as well as his own testimony that every ship he served on (not including the Tidewater and Vulcan), he worked on or was in the presence of someone else working on IMO (DeLaval) pump insulation tearouts, causing him to breathe in asbestos dust. (D.I. 376, Ex. A at 126:23-127:5, 216:15-217:3, 274:3-17, 276:4-278:11); *see also supra* section II(D)(11). Plaintiff knew that these were IMO (DeLaval) pumps because he reviewed their manuals and worked on IMO (DeLaval) pumps. *Id.* at 175:13-176:3. In addition, Plaintiff again relies on Mr. Mauldin, who testified that he personally diagrammed and memorized every system in the engine room, including IMO (DeLaval) pumps, and recalled DeLaval nametags on a screw-type oil pump. (D.I. 378, Ex. C at 216:21-218:1)

Plaintiff also relies on the testimony of Mr. McWhirter, who worked with IMO (DeLaval) pumps on the FDR. (D.I. 380, Ex. D at 119:1-121:19). Mr. McWhirter testified that IMO (DeLaval) pumps utilized braided carbon ring compressible asbestos graphite packing which would send asbestos dust airborne any time it was removed, repaired, or serviced. (*Id.*)

Viewed in the light most favorable to Plaintiff, the jury or fact finder could decide that IMO supplied the original, asbestos-containing product, which raises a genuine issue of material fact with respect to IMO's liability for Plaintiff's injuries. A reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from a product manufactured or supplied by IMO such that it was a substantial factor in the development of his illness.

### 12. Defendant Warren Pumps

I recommend that Warren's motion for summary judgment be denied[11] because a genuine issue of material fact exists as to whether Plaintiff's exposure to Warren's product was a substantial factor in causing his alleged injuries.

---

[11] However, see n.6, *supra*, granting Warren's motion as to Plaintiff's punitive damages claim.

Plaintiff had two tours of duty on the Forrestal. Plaintiff does not offer any evidence of exposure to a Warren Pump product during his first tour from 1958-1960. Plaintiff relies primarily on the testimony of Mr. Mauldin relating to Plaintiff's second tour on the Forrestal when their service overlapped.

The first dispute of fact between the parties concerns the identification of the particular pump manufactured by Warren and installed aboard the Forrestal. Warren avers that the only pumps it supplied were "JP-5 fuel oil" pumps, which had no asbestos containing compounds. (D.I. 393 at 2) Plaintiff offers contrary evidence through Mr. Mauldin's testimony that Warren manufactured the "main feed" pumps present in the MMR on board the Forrestal. (D.I. 382 at 2, Ex. A at 143:21-144:13) Moreover, such pumps contained original asbestos containing components. (*Id.* at 192:25-195:17, 233:2-234:20, Ex. F at 90:19-91:13) Furthermore, Plaintiff cites to the Warren Technical Manual regarding product specifications for its pumps, which lists replacement packing, gaskets, and insulation containing asbestos. (*Id.* at 4, Ex. E)

Viewing the facts in the light most favorable to Plaintiff, a jury could determine that Warren supplied the main feed pumps on the Forrestal. Absent direct evidence of exposure to Warren's products, such as testimony of an eye-witness, "'**substantial** exposure is necessary to allow an inference from circumstantial evidence that the exposure was a **substantial** factor in causing the injury.'" *Walkup v. Air & Liquid Systems*, Civ. No. 12-1635, 2014 WL 4447568, at \*1 (D. Del. Sept. 8, 2014) (Mem.) (quoting *Harbour v. Armstrong World Indus., Inc.*, Civ. No. 90-1414, 1991 WL 65201, at \*4 (6th Cir. April 25, 1991)) (emphasis in original).

Circumstantial evidence is sufficient in the instant case to create an issue of fact for the jury to resolve concerning whether Plaintiff had substantial exposure to a Warren pump containing asbestos components. In addition to identifying original insulation on the pumps, Mr. Mauldin

35

described the removal of large gaskets that distributed packing material, which contained asbestos, and created dust in the MMR sufficient to cover every man working in the MMR from head to toe. (D. I. 382, Ex. A at 223:18-24, 224:12-15, 235:24-236:2) Plaintiff, as a duty engineer, was frequently present in the MMR during pump overhauls. (*Id.* at 178:15-184:4) I recommend that the jury should determine whether such circumstantial evidence proves substantial exposure.

## V. CONCLUSION

As indicated in the chart *infra* and for the foregoing reasons, I recommend that the court GRANT Electrolux's motion for summary judgment, GRANT ABB's motion for summary judgment, GRANT Velan Valve's motion for summary judgment, GRANT GE's motion for summary judgment, GRANT CBS' motion for summary judgment, GRANT Foster Wheeler's motion for summary judgment, GRANT Owens-Illinois' motion for summary judgment, DENY Buffalo Pumps' motion for summary judgment, DENY-IN-PART Ingersoll Rand's motion for summary judgment, DENY Aurora's motion for summary judgment, DENY IMO's motion for summary judgment, and DENY-IN-PART Warren's motion for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| Electrolux Home Products Inc. | GRANT |
| ABB Inc. | GRANT |
| Velan Valve Corporation | GRANT |
| General Electric Company | GRANT |
| CBS Corporation | GRANT |
| Foster Wheeler LLC | GRANT |
| Owens-Illinois Inc. | GRANT |
| Buffalo Pumps Inc. | DENY |
| Ingersoll Rand Company | DENY-IN-PART |
| Aurora Pump Company | DENY |
| IMO Industries Inc. | DENY |
| Warren Pumps LLC | DENY-IN-PART |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed.

R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages

each. The failure of a party to object to legal conclusions may result in the loss of the right to de

novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. Appx. 924, 925 n.1 (3d Cir.

2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: September 30, 2015

Sherry R. Fallon
United States Magistrate Judge